**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**CHRISTOPHER J. HAMLETT,**

                   **Plaintiff,**

     **v.**

**CITY OF BINGHAMTON et al.,**

                  **Defendants.**

_____

                         **3:20-cv-880**
                         **(GLS/ML)**

**APPEARANCES:**          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Ronald R. Benjamin     RONALD R. BENJAMIN, ESQ.
P.O. Box 607
126 Riverside Drive
Binghamton, NY 13902

**FOR THE DEFENDANTS:**
HON. KENNETH FRANK      SHARON ANNE SORKIN
City of Binghamton          BRIAN M. SEACHRIST
Corporation Counsel        Assistants Corporation Counsel
38 Hawley Street
Binghamton, NY 13901

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiff Christopher Hamlett commenced this action against

defendants Richard David, Mayor of the City of Binghamton, Joseph

Zikuski, Chief of Police for the City of Binghamton, John Ryan, Assistant Chief of Police for the City of Binghamton, (collectively, hereinafter "individual defendants"), and the City of Binghamton, pursuant to Title VII of the Civil Rights Act of 1964[1] and 42 U.S.C. § 1981.  (Compl., Dkt. No. 1.) Pending before the court is defendants' motion to dismiss.  (Dkt. No. 9.) For the reasons that follow, the motion is granted in part and denied in part as described below.

## II.  **Background**[2]

Hamlett has served as a police officer for the City of Binghamton Police Department (BPD) since 2004.  (Compl. ¶ 8.)  He has served in a number of different roles at BPD, including as a member of BPD's SWAT team, a field training officer (FTO), and a "Pre-Academy instructor."  (*Id.* ¶¶ 11-12, 45.)   The FTO position, in particular, is "prestigious," requiring leadership skills, knowledge in all of BPD's rules and regulations, and various increased responsibilities.  (*Id.* ¶¶ 13-15.)

In October 2016, Hamlett applied for selection to the detective division for assignment in 2017.  (*Id.* ¶¶ 16-17.)  BPD has not adopted any

---

[1] *See* 42 U.S.C. §§ 2000e-2000e-17.

[2]  The facts are drawn from Hamlett's complaint, (Dkt. No. 1), and presented in the light most favorable to him.

2

regulations that set forth criteria for such applications.  (*Id.* ¶ 19.)  Hamlett's application was not successful; instead, three police officers, who, presumably but not alleged, were white, and who were less experienced and less qualified than him were selected.  (*Id.* ¶¶ 20-21.)  One such police officer was selected over him purportedly due to that officer's "phone hacking skills."  (*Id.* ¶ 24.)  Hamlett asserts that this justification is "clearly pretextual," and, in actuality, "racial animus tainted the decision-making process."  (*Id.* ¶¶ 23, 25.)  He maintains that he was denied selection "because of his race."  (*Id.* ¶ 23.)

After seeking advice from Zikuski as to how to increase his chances of being assigned to the detective division and being told by Zikuski that he would be a "good" detective, Hamlett, in 2017, re-applied for selection to the division for assignment in 2018.  (*Id.* ¶¶ 27-28.)  But he was, again, passed over for a presumably white police officer who was less experienced and less qualified than him.  (*Id.* ¶ 30.)

In January 2018, Ryan was placed in charge of the detective division. (*Id.* ¶ 29.)  Hamlett alleges that Ryan has a reputation for being "racist" and "biased against African Americans."  (*Id.* ¶¶ 34-35.)  He alleges that BPD Lieutenant, Alan Quinones, told Zikuski in 2015 that Ryan was a racist.  (*Id.*

3

¶ 34.)  Moreover, Hamlett asserts that Zikuski informed Quinones, that "the reason [Hamlett] was not given the position was because . . . Ryan would not agree to have an African American work in the detective division so long as he was in charge."  (*Id.* ¶¶ 31-33.)  Hamlett also applied for the 2019 opening in the detective division, and seemingly, although not alleged, was passed over again.  (*Id.* ¶ 36.)

On August 20, 2019, Hamlett filed a complaint with the New York State Division of Human Rights (NYSDHR) and the Equal Employment Opportunity Commission (EEOC), and was issued a right-to-sue letter by the EEOC.  (*Id.* ¶ 22.)  A few months later, copies of the City's answer to this complaint were posted in BPD's locker room and gym, and were placed within documents that supervisors reviewed on a daily basis.  (*Id.* ¶ 57.)  Hamlett has also been "shunned and ostracized by both officers and supervisors" at BPD, and individual defendants have failed to take any steps to intervene or ameliorate this situation.  (*Id.* ¶¶ 59-62.)

He commenced the instant action in August 2020, asserting the following three claims: (1) a Title VII employment discrimination claim, (2) a Title VII retaliation claim, and (3) a discrimination claim pursuant to 42 U.S.C. § 1981.  (*See generally* Compl.)  Hamlett seeks monetary damages,

4

injunctive relief, attorney's fees, and a recoupment of expenses he incurred by litigating this matter before the NYSDHR.  (*Id.* ¶ 40.)

### III.  Standard of Review

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV.  Discussion

#### A.    Title VII Claims

Hamlett brings a Title VII employment discrimination claim and a Title VII retaliation claim, apparently against all defendants.  (*See generally* Compl.)  Defendants argue that Title VII claims cannot be made against individuals, and, thus, to the extent Hamlett brings these claims against individual defendants, they should be dismissed.  (Dkt. No. 9, Attach. 5 at 17.)  Hamlett concedes in his opposition to defendants' motion to dismiss that his retaliation claim is brought only against the City, (Dkt. No. 11 at 12), but he is silent as to his employment discrimination claim, (*see generally id.*).

It is axiomatic that "Title VII does not impose liability on individuals."

*Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) (citations omitted); *see Golden v. Syracuse Reg'l Airport Auth.*, No. 5:20-CV-1566, 2021 WL 485731, at *1 (N.D.N.Y. Feb. 10, 2021) ("[I]ndividuals are not subject to liability under Title VII" (internal quotation marks and citation omitted)).  Accordingly, defendants' motion to dismiss Hamlett's Title VII claims as against individual defendants is granted.

Additionally, in his opposition to defendants' motion to dismiss, Hamlett concedes that, to the extent that his Title VII claims are based on his unsuccessful applications for assignment to the detective division in 2017 and 2018, they are time-barred.  (Dkt. No. 11 at 8.)  Accordingly, his Title VII claims relate only to his 2018 application for assignment in the detective division in 2019, and the rest of the allegations consist of "background evidence."  (*Id.*)

### 1.    Employment Discrimination

Hamlett brings a Title VII employment discrimination claim against the City, asserting that the actions described above "constitute a continuous pattern of racist behavior that has caused [him] injury including but not limited to failing to be appointed to the detective division."  (Compl. ¶ 38.)  According to Hamlett, assignment as a BPD detective is "highly

desired" and affords police officers the opportunity to earn more money, and, thus, defendants' alleged discrimination deprived Hamlett of "advancement in his career in law enforcement," in addition to causing him "embarrassment and humiliation" and "emotional distress and mental anguish." (*Id.* ¶¶ 37, 39.)

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his . . . terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42. U.S.C. § 2000e-2(a).  A plaintiff asserting a claim under Title VII may establish a prima facie case by showing that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) "the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  *See Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004).  The last factor may be satisfied "through direct evidence of intent to discriminate, or by indirectly showing circumstances giving rise to an inference of discrimination."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (citations omitted).

The City argues that this claim should be dismissed because

(1) Hamlett has not set forth sufficient allegations to establish that he was qualified for the detective position, (2) denying Hamlett a position in a particular assignment is not an adverse employment action for purposes of Title VII, and (3) even if Hamlett did suffer an adverse employment, he has not set forth sufficient allegations to establish discriminatory intent.  (Dkt. No. 9, Attach. 5 at 8-11.)  In response, Hamlett contends that the allegations in his complaint are sufficient to maintain his Title VII employment discrimination claim, and that the City's arguments are based on a higher burden of proof that does not apply at the pleading stage.  (Dkt. No. 11 at 3-7.)

The court agrees with Hamlett that, at this early stage in the litigation, he has set forth sufficient allegations to maintain a Title VII employment discrimination claim.  First, as to whether he was qualified for selection to the detective division, he has alleged that he has been a police officer since 2004, and has served in various "prestigious" roles at BPD, including as an FTO, a position that requires leadership skills and knowledge in all of BPD's rules and regulations.  (Compl. ¶¶ 8, 11-15, 45.)  He has also alleged that Zikuski, who, as Chief of Police, presumably has knowledge as to the qualifications for detective, told him that he would make a good

detective, and that there are no formal criteria or regulations as to detective

selection.  (*Id.* ¶¶ 19, 28.)

Next, "[a]n adverse employment action is a materially adverse

change in the terms and conditions of employment . . . [that] is more

disruptive than a mere inconvenience or an alteration of job

responsibilities."  *Abboud v. Cnty. of Onondaga, N.Y.*, 341 F. Supp. 3d 164,

179 (N.D.N.Y. 2018) (citation omitted).  "Examples of materially adverse

changes include termination of employment, a demotion evidenced by a

decrease in wage or salary, a less distinguished title, a material loss of

benefits, significantly diminished material responsibilities, or other indices .

. . unique to a particular situation."  *Id.* (citation omitted).

At this juncture, a denial of selection to the detective division, a

quasi-promotion and something that prohibited Hamlett from advancing in

his career, is an adverse employment action.  *See Sotak v. Bertoni*, 501 F.

Supp. 3d 59, 79 (N.D.N.Y. 2020) ("While there is no exhaustive list of what

constitutes an adverse employment action, courts have held that the

following actions, among others, may qualify: discharge or demotion; denial

of a provisional or permanent promotions; involuntary transfer that entails

objectively inferior working conditions; denial of benefits; denial of a

requested employment accommodation; denial of training that may lead to promotional opportunities; and a shift assignment that makes a normal life difficult for the employee." (citation omitted)); *Krul v. Brennan*, 501 F. Supp. 3d 87, 97 (N.D.N.Y. 2020) (finding that allegations that a plaintiff "missed out on several career advancement opportunities and was denied professional training" was sufficient to satisfy the "adverse employment action" element at the motion to dismiss stage).  Accordingly, Hamlett's complaint sufficiently alleges that he suffered an adverse employment action for purposes of his Title VII employment discrimination claim.

Finally, the City contends that Hamlett has not sufficiently pleaded discriminatory intent because one of the allegations on which he relies to show racial animus—statements from his co-worker, Alan Quinones—consists of "self-serving hearsay"; he was selected for other special detail assignments during his tenure at BPD; he was denied selection to the detective division prior to Ryan taking over as well; and, aside from "conclusory speculation," Hamlett has not alleged that he was similarly situated in all material respects to the officers who were ultimately selected as detectives.  (Dkt. No. 9, Attach. 5 at 8-11.)

As argued by Hamlett, (Dkt. No. 11 at 3-7), many of the City's

arguments with respect to this claim are not applicable at the motion to dismiss stage in the litigation.  "[T]o survive a motion to dismiss, a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglass*, at least as the test was originally formulated."  *Garvey v. Wegmans*, No. 5:17-CV-1257, 2018 WL 5983374, at *4 (N.D.N.Y. Nov. 14, 2018) (internal quotation marks and citations omitted).  Rather, "to defeat a motion to dismiss . . . in a Title VII discrimination claim, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision."  *Vega*, 801 F.3d at 87.

Here, Hamlett has alleged that his race was a motivating factor in his denial to the detective division.  He has alleged that Ryan had a "reputation" at BPD "for being racist," (Compl. ¶ 35), that Zikuski stated "that the reason he was not given the position was because . . . Ryan would not agree to have an African American work in the detective division," (*id.* ¶ 31), and, based on the totality of the complaint, the court assumes for purposes of ruling on the pending motion that the alleged lesser qualified individuals who were ultimately selected over him were white, (*see generally* Compl.).

11

In sum, at this early stage, Hamlett has set forth sufficient allegations to maintain a Title VII employment discrimination claim against the City, and, thus, the motion to dismiss in that regard is denied.

### 2.   Retaliation

Hamlett brings a Title VII retaliation claim against the City, asserting that, because he pursued his NYSDHR and EEOC claims against BPD, he was not re-assigned as a Pre-Academy instructor, a desirable position that he had been assigned to on an annual basis from 2017 through 2019. (Compl. ¶¶ 49-50.)  Hamlett alleges that he was also retaliated against by receiving "a poor evaluation in 2019, despite the fact that [he] performed his duties no differently than he had for the previous fifteen years," and by not being scheduled for "Glock Armorer School."  (*Id.* ¶¶ 51-52.)

To state a retaliation claim under Title VII, a plaintiff must plausibly allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Littlejohn v. City of New York*, 795 F.3d 297, 315-16 (2d Cir. 2015) (citation omitted).  The City concedes that Hamlett's commencement of a discrimination claim against it is a protected activity

12

and that it was aware of that discrimination claim.  (Dkt. No. 9, Attach. 5 at 13.)  However, it argues that the claim should be dismissed because Hamlett has not established there was an adverse employment action taken against him or that there was a causal connection between the filing of his complaint and any adverse employment action.  (*Id.* at 13-14.)

First, "in the context of a Title VII retaliation claim, an adverse employment action is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Vega*, 801 F.3d at 90 (internal quotation marks and citation omitted).  Examples of adverse actions "include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (internal quotation marks and citation omitted).  "Petty slights or minor annoyances that often take place at work and that all employees experience do not constitute actionable retaliation."  *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (internal quotation marks and citation omitted).  However, "an act that would be immaterial in some situations is material in others," and some minor acts

may be substantial if considered in the aggregate.  *Id.*

Hamlett alleges that each of the following constitute an adverse employment action: (1) he was not scheduled for a "Glock Armorer School recertification," (2) he was not assigned as a Pre-Academy instructor, and (3) he received a poor evaluation "despite the fact that [he] performed his duties no differently than he had for the previous fifteen years."  (Compl. ¶¶ 45-52.)  The City contends that none of these things "affected any material employment conditions," as he has alleged "no change to his responsibilities, pay, rank, or title."  (Dkt. No. 9, Attach. 5 at 13.)

Contrary to the City's contention, the alleged retaliatory act no longer needs to "bear on the terms or conditions of employment; the proper inquiry now is whether the employer's actions [were] harmful to the point that they could well dissuade a reasonable worker from" engaging in protected activity."  *Hicks*, 593 F.3d at 169  (citation omitted).

Indeed, courts have found that conduct similar to the conduct alleged by Hamlett constitutes a retaliatory act.  *See Orsaio v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 6:17-cv-00685, 2019 WL 3891085, at \*26 (N.D.N.Y. Aug. 19, 2019) ("[T]he Second Circuit has made it clear that a poor evaluation could very well deter a reasonable worker from

complaining, and may therefore constitute an adverse employment action for purposes of a Title VII retaliation claim." (internal quotation marks and citation omitted)); *Abboud*, 341 F. Supp. 3d at 183 n.23 ("[Plaintiff's] retaliation claims based on his omission from the 2013 firearms qualification list survives."); *Morris v. N.Y. State Police*, 268 F. Supp. 3d 342, 369 (N.D.N.Y. 2017) ("Courts in the Second Circuit have taken a 'generous' view of retaliatory acts at the motion to dismiss stage." (citation omitted)).  Accordingly, Hamlett has sufficiently alleged an adverse employment action for purposes of his retaliation claim.

Next, as for causation, a plaintiff must plausibly plead a connection between the retaliatory act and his engagement in protected activity.  *See* 42 U.S.C. § 2000e-3(a).  To adequately plead causation, a "plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action."  *Vega*, 801 F.3d at 90 (citation omitted).  "It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision."  *Id.* at 90-91 (citation omitted).  However, the "but-for causation does not . . . require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive."  *Id.* at 91 (internal

quotation marks, alterations, and citation omitted).

"Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (citation omitted); *see Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship." (citation omitted)).

The City argues that the complaint does not establish causation because Hamlett's theory of causation is based on temporal proximity, which is too attenuated here as seven months passed between Hamlett filing his discrimination complaint and when he was allegedly passed over for assignment as a Pre-Academy instructor, and he has not specified "when (or if) the Glock Armorer School recertification was scheduled" or when exactly he received his poor evaluation.  (Dkt. No. 9, Attach. 5 at 14.) In his opposition, Hamlett does not respond to this argument, and, instead asserts that the City relies on "evidentiary burdens . . . that are . . . not applicable at the pleading stage."  (Dkt. No. 11 at 9-10.)

16

Here, there is no allegation of retaliation in the complaint in that there are no specific facts alleged to establish that Hamlett's poor evaluation, failure to be selected as a Pre-Academy instructor, and failure to be invited to attend Glock Armorer School recertification would not have occurred in the absence of a retaliatory motive. (*See generally* Compl.) Additionally, temporal proximity cannot form the basis of causation given that, aside from his failure to be selected as a Pre-Academy instructor, which was seven months after he filed his discrimination complaint, Hamlett has not alleged when exactly the adverse employment actions took place, or if they even took place after he filed his NYSDHR and EEOC complaint. (*Id.*) Moreover, Hamlett has provided the court with absolutely no clarification or argument with respect to this issue in his opposition brief. (*See generally* Dkt. No. 11.)

Accordingly, Hamlett's complaint fails to adequately allege the causation element of his Title VII claim, and, thus, the City's motion to dismiss with respect to that claim is granted.[3] *See New York ex rel.*

_____

[3] The City also maintains that Hamlett's retaliation claim must be dismissed for the separate reason that he has failed to exhaust it. (Dkt. No. 9, Attach. 5 at 15-16.) A plaintiff asserting a Title VII claim in federal court "generally must file a charge of discrimination with the EEOC within three hundred days after the alleged unlawful employment practice occurred, and must then file an action in federal court within 90 days of receiving a right-to-sue letter from the agency." *Duplan*, 888 F.3d at 621-22 (internal quotation marks and citations omitted).

*Khurana v. Spherion Corp.*, 511 F. Supp. 3d 455, 480 (S.D.N.Y. 2021)

("Given the glaring absence of direct evidence of causation, the passage of

approximately seven months between [the plaintiff's] arguably protected

activity and his termination defeats any inference of causation between the

two." (citations omitted)); *Williams v. N.Y.C. Dep't of Educ.*,

No. 1:19-cv-01353, 2021 WL 1178118, at *9 (S.D.N.Y. Mar. 29, 2021)

("Indeed, even if one only measures from the date of Plaintiff's first EEOC

charge to the date of her termination, more than seven months passed

between the charge and Plaintiff's termination.  Plaintiff cannot show

causal connection by temporal proximity.").

**B.    Section 1981 Discrimination Claim**

  Hamlett brings a discrimination claim pursuant to 42 U.S.C. § 1981

against all defendants, asserting that Ryan refused to consider assigning

Hamlett to the detective division because of racial animus, that David and

---

Hamlett asserts that his retaliation claim is reasonably related to the claim brought to the EEOC, and, thus, it is exhausted.  (Dkt. No. 11 at 10-11.)  A claim is "reasonably related" if (1) "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination"; (2) "the complaint is one alleging retaliation by an employer against an employee for filing an EEOC charge"; or (3) "the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."  *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (internal quotation marks and citations omitted).  However, even assuming that Hamlett's retaliation claim is reasonably related to the claim alleged in his EEOC charge, the court does not reach the exhaustion issue, as it is not jurisdictional, *see Boos v. Runyon*, 201 F.3d 178, 182 (2d Cir. 2000), and the claim is dismissed on the merits for the reasons described above.

Zikuski were aware of this and did not ameliorate the situation, and that

Hamlett was subject to work-place harassment as retaliation for filing his

race-based discrimination complaint.  (Compl. ¶¶ 54-67.)  In his opposition

to defendants' motion to dismiss, Hamlett apparently concedes that, as to

individual defendants, he brings this claim against them in their individual

capacities only.  (Dkt. No. 11 at 15.)  Hamlett also concedes that his claim

can arise only from actions that took place subsequent to August 4, 2017,

based on the applicable three-year statute of limitations, and that

statements and other facts that took place prior to that date are background

information.  (*Id.* at 12.)

Claims of discrimination under Section 1981 are analyzed under the

same standard as Title VII claims.  *See Pertillar v. AAA W. & Cent. N.Y.*,

No. 5:16-cv-238, 2018 WL 583115, at *7 (N.D.N.Y. Jan. 26, 2018) ("The

standards applicable to [the plaintiff's] Section 1981 claims are the same as

those applicable to his Title VII claims." (citations omitted)); *Brown v. State*

*Univ. of N.Y.*, No. 3:12-cv-411, 2015 WL 729737, at *3 n.7 (N.D.N.Y. Feb.

19, 2015) ("Both the Supreme Court and Second Circuit have treated the

substantive issues arising under Title VII and § 1981 identically." (alteration

and citations omitted)).  As such, for the reasons described above, *see*

19

*supra* Part IV.A.1, Hamlett has set forth sufficient allegations to support a

Section 1981 claim.  However, defendants proffer additional reasons for

why this specific claim should be dismissed, which are addressed below.

     *1.    Section 1981 Claim Against Individual Defendants*

     Defendants argue that the claim should be dismissed against

individual defendants because Hamlett has not sufficiently pleaded that

they were personally involved in any discrimination or that they acted with

any discriminatory intent.  (Dkt. No. 9, Attach. 5 at 19-22.)

     "In order to make out a claim for individual liability under § 1981, a

plaintiff must demonstrate some affirmative link to causally connect the

actor with the discriminatory action. . . . [P]ersonal liability under section

1981 must be predicated on the actor's personal involvement."  *Patterson*

*v. Cnty. Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004) (internal quotation

marks and citation omitted).  Personal involvement on the part of a

supervising official includes direct participation in the challenged conduct,

and may also be established by allegations setting forth an official's:

> (1) failure to take corrective action after learning of a
> subordinate's unlawful conduct, (2) creation of a
> policy or custom fostering the unlawful conduct,
> (3) gross negligence in supervising subordinates who
> commit unlawful acts, or (4) deliberate indifference to

> the rights of others by failing to act on information
> regarding the unlawful conduct of subordinates.

*Mabb v. Town of Saugerties*, No. 1:18-CV-866, 2020 WL 210313, at *5

(N.D.N.Y. Jan. 14, 2020) (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d

733, 753 (2d Cir. 2003)).

While the complaint is sparse on details, reading it broadly, Hamlett

has set forth sufficient allegations to establish personal involvement on the

part of all individual defendants.  He has alleged that Ryan directly

committed the discriminatory act, and that David and Zikuski were aware of

the act, and did nothing to correct or ameliorate the situation.  (Compl. ¶¶

55-56, 61-62.)  In particular, Zikuski is alleged to have been "fully aware"

that Ryan had a bias against African Americans prior to the time he

promoted him to Captain . . . and that . . . [Hamlett] would never be

assigned to detective so long as Ryan was [in charge of the division]."  (*Id.*

¶ 56.)  Further, Hamlett alleges that Zikuski knew he was being "shunned

and ostracized by both officers and supervisors" at BPD.  (*Id.* ¶¶ 59-60.)

At this early stage, these allegations are sufficient, if only by a thread,

to maintain a Section 1981 claim against individual defendants.  *See Avent*

*v. Target Corp.*, No. 1:19-CV-1565, 2021 WL 3089120, at *6 (N.D.N.Y. July

22, 2021) ("Plaintiff alleges that [individual defendants] failed to address harassment directed at him by white employees.  At this stage, that is enough, albeit barely, to keep them in the case." (citation omitted)); *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 225 (E.D.N.Y. 2018) ("The Plaintiff alleges that Kaczynski, [her] direct supervisor, was the principal actor in her discrimination claims.  Sygman, as Kaczynski's supervisor, was allegedly informed about the discrimination over a period of several months but took no remedial action.  The Plaintiff has clearly stated a claim of individual liability against both Kaczynski and Sygman under § 1981.").  Thus, the motion to dismiss in that regard is denied.

### 2.  Monell Claim

Defendants argue that Hamlett's Section 1981 claim should be dismissed against the City because he "fails to allege a specific policy or practice, let alone official endorsement or any specific custom, or usage." (Dkt. No. 9, Attach. 5 at 23.)

A municipality may be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  To

establish a municipal policy or custom, a plaintiff must allege (1) a formal policy endorsed by the municipality; (2) actions taken or decisions made by the municipality's policymakers, which caused the alleged civil rights violation; (3) a practice so widespread that it constitutes "a custom or usage"; or (4) a failure by the municipality's policymakers to properly train or supervise their subordinates.  *See Green v. City of New York*, 465 F.3d 65, 80-82 (2d Cir. 2006).

Hamlett argues that the complaint sets forth sufficient allegations to maintain a claim against the City due to David and Zikuski's status as policymakers with respect to personnel decisions.  (Dkt. No. 11 at 15-16.) On reply, defendants' do not address the issue of whether David and Zikuski are final policymakers for purposes of Hamlett's claim.  (Dkt. No. 13 at 9-10.)  Although it might ultimately be revealed during discovery that this is not true, it is clear that David and Zikuski *may* be considered policymakers for purposes of *Monell* liability at this phase of the litigation. *See Gronowski v. Spencer*, 424 F.3d 285, 296-97 (2d Cir. 2005) (holding retaliatory termination by mayor of city established *Monell* liability because "he has final authority over hiring and firing decisions, which are discretionary matters"); *Griffin v. Vill. of Frankfort*, No. 10-CV-627, 2012 WL

23

4491276, at *4 (N.D.N.Y. Sept. 28, 2012) ("Thus, the record certainly demonstrates or suggests that [the Chief of Police] has final policy-making authority in the Village, at least insofar as police matters go.").

Accordingly, defendants' motion to dismiss in this regard is denied as well.  And, just like any other argument made in their motion to dismiss, defendants are free to renew this argument at summary judgment.

## C.    __Attorney's Fees__

Hamlett asserts in the complaint that he is entitled to "reasonable attorney's fees including the fees expended in the administrative proceedings before the [NYSDHR]."  (Compl. ¶ 67.)  In their motion to dismiss, defendants contend that "[b]ecause [Hamlett] fails to plead [that] he prevailed before the NYSDHR and/or the EEOC, he cannot state a claim for attorney fees from his actions before those bodies in this proceeding."  (Dkt. No. 9, Attach. 5 at 24.)  Because there is virtually no briefing on this issue, and granting defendants' motion in this regard will not narrow the issues in the case, the court declines to address whether Hamlett can recover attorney's fees from litigating his NYSDHR and EEOC actions at this time.  Defendants can renew their motion at a later juncture.

24

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 9) is

**GRANTED IN PART and DENIED IN PART** as follows:

>**GRANTED** as to the following claims, which are **DISMISSED**,
>Hamlett's (1) Title VII claims to the extent that they are based
>on actions taken by defendants prior to October 2018; (2) Title
>VII retaliation claim; (3) Title VII employment discrimination
>claim against individual defendants; (4) Section 1981 claim
>against individual defendants to the extent that the claim is
>brought against them in their official capacities; and (5) Section
>1981 claim to the extent that the claim is based on actions
>taken by defendants prior to August 2017; and
>
>**DENIED** in all other respects; and it is further

**ORDERED** that the following claims remain against the City of
Binghamton: (1) a Title VII employment discrimination claim and (2) a
Section 1981 discrimination claim; and it is further

**ORDERED** that the following claim remains against individual
defendants: a Section 1981 discrimination claim, brought against them in

their individual capacities; and it is further

      **ORDERED** that defendants shall respond to the complaint, (Dkt.

No. 1), within the time allotted by the rules; and it is further

      **ORDERED** that the parties shall contact Magistrate Judge Miroslav

Lovric to schedule further proceedings; and it is further

      **ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

August 23, 2021
Albany, New York

Gary L. Sharpe
U.S. District Judge